_E-filed:_        _9/30/2008_

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ULYSSES DAVIS, JR., | No. C 03-4334 RMW (PR) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MARIN COUNTY JAIL, et al., | |
| Defendants. | |
| _____/ | (Docket Nos. 60, 82, 83) |

**INTRODUCTION**

Plaintiff filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that medical staff at the Marin County Jail ("MCJ") were deliberately indifferent to his medical needs.[1] Plaintiff filed a separate § 1983 action, alleging that officers of the Marin County Sheriff used excessive force against him in violation of the Eighth Amendment.[2]  These actions were consolidated.

Defendants move for summary judgment, contending that defendants Frima Stewart and

1.  Case No. 03-4334 RMW (PR).

2.  Case No. 03-04512 RMW (PR).

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.03\Davis334.msj.md

1   Randy Hurst were not deliberately indifferent to plaintiff's medical needs, and that they are entitled

2   to judgment as a matter of law.  Defs.' Mot. for Summ. J., P. & A. ("MSJ") at 1, 15.  Defendants

3   further contend that plaintiff's claims that his jailors used excessive force are without merit.  Id.

4   Plaintiff has filed an opposition.  See Docket Nos. 82 & 83.

5                                                       **BACKGROUND**

6          Plaintiff sustained skin burns as a result of placing a can of gasoline in his vehicle and then

7   driving the vehicle into his girlfriend's house.  The California Court of Appeal summarized the facts

8   as follows:

9          [In February 2003, plaintiff] crashed his car through the exterior wall of [his
           girlfriend's] home and part way into her bedroom.  [Plaintiff's girlfriend] was in bed
10         and her daughter was just outside [her] bedroom at the moment of impact.  A
           neighbor ran to the scene and extinguished a fire inside [plaintiff's] vehicle.  A gas
11         can was found in the passenger area of [plaintiff's] car, and it was later determined
           the fire in the [plaintiff's] car was intentionally set using matches and gasoline.
12         Subsequently, police found [plaintiff] near the scene smelling strongly of gasoline
           and with severe burns to his hands and body.
13

14   People v. Davis, No. A109141, 2007 WL 549842 (Cal. Ct. App. Feb. 23, 2007) at *2.

15                                                        **DISCUSSION**

16   **I.     Standard of Review**

17         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that

18   there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as

19   a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

20   the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact

21   is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

22   party.  Id.

23         The party moving for summary judgment bears the initial burden of identifying those

24   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue

25   of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will

26   have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable

27   trier of fact could find other than for the moving party.  But on an issue for which the opposing party

28

1    will have the burden of proof at trial, as is the case here, the moving party need only point out "that

2    there is an absence of evidence to support the nonmoving party's case." Id. at 325.

3            Once the moving party meets its initial burden, the nonmoving party must go beyond the

4    pleadings and, by its' own affidavits or discovery, "set forth specific facts showing that there is a

5    genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

6    material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

7    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is not the task of the court to scour

8    the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir.

9    1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the

10   evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing,

11   "the moving party is entitled to judgment as a matter of law."  Celotex Corp v. Catrett, 477 U.S. at

12   323.

## II.    Plaintiff's Medical Claims

14          Defendants contend that there is no evidence that defendants Frima Stewart, Assistant

15   Director of Health Services for the Marin County Department of Health and Human Services, and

16   Randy Hurst, Chief of Detention Health Services, were deliberately indifferent to plaintiff's medical

17   needs.[3]  MSJ at 15.  Stewart and Hurst were the only defendants served with the complaint alleging

18   deliberate indifference.[4]  Order of Service (Docket No. 22) at 6.

19          The following facts will provide the necessary background.  Plaintiff alleges that when he

20   arrived at MCJ in March 2003 he was suffering from third-degree burns, high blood pressure and a

21   seizure disorder.  Id. at 4.  He claims that during his period of confinement at the Marin County Jail

22   through August 2004 he was not provided with adequate pain medication or treatment for his burns,

23   that the skin grafts on his head became severely infected, and that the burns on his hands and ear

25   3.  Defendants contend that they are protected from suit on these claims because of the
         doctrine of qualified immunity.  MSJ at 17.  Because the court is dismissing these claims
26       on other grounds, it is not necessary to consider the qualified immunity defense.

27   4.  Plaintiff named other persons as defendants to these claims, but because he could list
28   only first names, the Court declined to order service of the complaint on these persons.

1   were not properly attended to, resulting in undue pain and suffering.  Id.  He also claims that he was

2   denied prompt and adequate medical treatment after he fell down the stairs and cut his elbow,

3   eventually requiring that an outside surgeon be called in to insert stitches.  Id.

4          Defendants' version of the facts are as follows.  Prior to plaintiff's arrival at MCJ on March

5   14, 2003, plaintiff had received treatment at St. Francis Hospital's Burn Unit, where he was given

6   skin grafts on his hands, face, scalp, ears and left thigh.  MSJ at 8.  Defendants state that plaintiff

7   was sent to MCJ after St. Francis determined that plaintiff was fit for incarceration.  Id.  St. Francis

8   sent along an aftercare treatment plan that was followed by medical staff at MCJ.  Id.  According to

9   defendants, while at MCJ plaintiff received treatment from a plastic surgeon, an occupational

10  therapist, nurses, and other medical professionals.  Id. at 8-9.  The treatment included several topical

11  and oral medications, including ones to treat his high blood pressure and to guard against seizures,

12  and a constant monitoring of his injuries.  Id. at 15.

13         Defendants assert that Stewart and Hurst did investigate plaintiff's complaints and the

14  treatment he was receiving.  Id.  According to defendants, Stewart, who was responsible for program

15  and administrative oversight of all Marin County public health programs, and Hurst, who was

16  responsible for administrative oversight at MCJ, addressing inmates' grievances, and supervising the

17  jail's nursing staff, did not personally provide any medical services to plaintiff.  Id.  Stewart asserts

18  that she is not a registered nurse and that her duties do not involve providing direct patient care or

19  medical services to inmates.  MSJ, Stewart Decl. ¶ 2.  From her declaration, it appears that Stewart's

20  only contact with plaintiff was through a letter she received from plaintiff regarding his medical

21  care, and through her supervisory meetings with Hurst.  Id. ¶ 3-4.  According to Stewart, when she

22  received plaintiff's letter, Stewart asked Hurst to review plaintiff's medical records and assess his

23  treatment.  Id. ¶ 4.  Stewart asserts that after Hurst informed her that plaintiff was receiving proper

24  medical care, she responded to plaintiff's letter to inform him of her inquiry into his medical care.

25  Id.

26         Hurst, who is a registered nurse, "met with plaintiff once or twice a week to discuss his

27  medical needs and treatment, and also met with plaintiff's criminal attorney about these issues."

28

1  MSJ at 16.  Hurst also "reviewed plaintiff's medical records on a regular basis to ensure he was

2  being seen by medical staff and that his needs were being addressed."  MSJ at 15.

3       Deliberate indifference to a prisoner's serious medical needs violates the Eighth

4  Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S.

5  97, 104 (1976).  A determination of "deliberate indifference" involves an examination of two

6  elements:  the seriousness of the prisoner's medical need and the nature of the defendant's response

7  to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

8  WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

9       A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk

10  of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v.

11  Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness).  The

12  prison official must not only "be aware of facts from which the inference could be drawn that a

13  substantial risk of serious harm exists," but "must also draw the inference."  Id.  Consequently, in

14  order for deliberate indifference to be established, there must exist both a purposeful act or failure to

15  act on the part of the defendant and harm resulting therefrom.  See McGuckin, 974 F.2d at 1060.  In

16  order to prevail on a claim of deliberate indifference to medical needs, Plaintiff must establish that

17  the course of treatment the doctors chose was "medically unacceptable under the circumstances" and

18  that they chose this course in "conscious disregard of an excessive risk to plaintiff's health."  See

19  Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004).  A claim of mere negligence related to

20  medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not

21  enough to make out a violation of the Eighth Amendment.  Id.; Franklin v. Oregon, 662 F.2d 1337,

22  1344 (9th Cir. 1981).

23       As to defendant Stewart, plaintiff has not presented evidence that precludes summary

24  judgment.  More specifically, plaintiff has not shown that Stewart is liable for the acts or omissions

25  of her employees.  There is no "pure" respondeat superior liability for § 1983 claims.  Preschooler II

26  v. Clark Co. Sch. Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) (citation removed).  Nor has

27  plaintiff shown that Stewart directed or participated in her subordinates' treatment of plaintiff.  From

28

1   the evidence before the court, she asked Hurst to investigate and report back to her – there is no

2   evidence that she specifically directed the course of plaintiff's treatment or otherwise participated in

3   his care, which is the only way in which supervisors may be liable for the acts of subordinates under

4   § 1983.  Id.  Also, plaintiff has also pointed to no policy created or administered by Stewart that

5   would connect her to the allegedly unconstitutional acts of her employees.

6         Furthermore, even if plaintiff had shown that Stewart could be liable for the acts of her

7   employees, he has not shown that her actions constituted deliberate indifference.  The evidence

8   before the court indicates that Stewart responded to plaintiff's letter of complaint, and, in

9   determining that plaintiff received proper medical care, Stewart relied on the judgment of a medical

10  professional.  Based on this evidence, which plaintiff has not countered, the record supports the

11  conclusion that Stewart acted with the belief that plaintiff was receiving proper medical care, and

12  therefore, she cannot have been aware of an excessive risk to plaintiff's health and then ignored it.

13  Accordingly, defendants' motion for summary judgment as to the claims against Stewart is

14  GRANTED.  Plaintiff's claims against Stewart are DISMISSED WITH PREJUDICE.  Stewart is

15  hereby terminated from this action.

16        As to defendant Hurst, plaintiff has not shown evidence that precludes summary judgment.

17  More specifically, plaintiff's evidence either does not support his claims or simply indicates a

18  difference of medical opinion.  For example, plaintiff asserts that medical staff withheld medications

19  that would ameliorate pain, and treat his other medical conditions, and as evidence for this appends

20  two Marin County Prisoner Grievance forms.  Am. Compl. at 7-8, Exs. B & C.  The first exhibit

21  contains plaintiff's description of his grievance, but the area for the prison staff's response is blank.

22  Id., Ex. B.  The prison staff response in the second exhibit states, "[Plaintiff] is receiving the

23  appropriate care.  I spoke with him today and will follow his suggestion of Tylenol [indecipherable]

24  and [C]elebrex []."  Id., Ex. C.  As noted by MCJ staff in another grievance form, "Plastic surgeon in

25  [to] see [plaintiff.] [] [A]ntibiotic will be started."[5]  Id.  These exhibits, submitted by plaintiff,

26

27  _____

    5.  Under these lines appears "I concur with this statement – R. Hurst, Chief of Detention
28  Nursing."  Am. Compl., Ex. C.

indicate that, contrary to plaintiff's assertions, that medical staff, at plaintiff's suggestion, provided

pain medications, antibiotics, and treatment for his burns.  These exhibits also indicate that medical

staff were responsive to plaintiff's grievances and requests.  Such attendance to his medical needs is

further sustained by statements by plaintiff, such as when he contends that staff failed to treat a

laceration he sustained, yet admits that a surgeon was later called in to treat the wound.

Furthermore, plaintiff contends that defendants failed to provide various treatments he

believes were appropriate, such as "a pair of compression garments gloves."  Am. Compl. at 7.

Failure to provide a plaintiff with the medical care of his choice is not, without more, per se

unconstitutional.  As articulated in Toguchi, a plaintiff must establish that the course of treatment the

doctors chose was "medically unacceptable under the circumstances" and that they chose this course

in "conscious disregard of an excessive risk to plaintiff's health."  391 F.3d at 1058-60.  Plaintiff has

not provided evidence that the course of conduct medical staff chose was medically unacceptable or

that this course of conduct decided on – here, failure to provide the specified gloves – was made in

conscious disregard of an excessive risk to plaintiff's health.

Finally, plaintiff has failed to causally connect Hurst's conduct with the alleged acts of

deliberate indifference.  Alleging, as plaintiff has, that Hurst is liable because of his supervisory

position is, as stated above, insufficient.  Plaintiff has not provided evidence that Hurst participated

in the alleged acts or specifically directed the employees who actually provided direct medical care

to withhold medication or other forms of treatment.

Accordingly, defendants' motion to dismiss plaintiff's claims against defendant Hurst is

GRANTED.  Plaintiff's claims against Hurst are DISMISSED WITH PREJUICE.  Hurst is hereby

terminated from this action.

### III.    Plaintiff's Excessive Force Claims

Plaintiff contends that on two occasions, officers of the Marin County Sheriff used excessive

force against him.[6]  Plaintiff alleges that on the first occasion, which occurred on April 11, 2003,

---

6. Along with his excessive force claims, plaintiff contends that on one occasion, he was
incarcerated for seventy-three hours in a "rubber room" which lacked running water and a

sheriff's deputies ordered plaintiff to "cuff up," even though they knew plaintiff had significant burn injuries on his hands, on which skins grafts had been placed.  Pl.'s Decl. in Opp. to MSJ (Docket No. 84) at 2.  Plaintiff contends that he removed his gloves so that the deputies would see that he had severe injuries to his hands, making him unable to comply with their orders.  Id.  Plaintiff states that he then sat down and rested his hands on his knees so that his injured hands were visible to the deputies.  Id.  Plaintiff contends that the deputies came into his cell, slammed him to the ground, had his head hit against the ground, and one deputy placed his knee against plaintiff's back.  Id. at 3. Plaintiff maintains that he never resisted or fought back.  Id. at 2, 8.

Plaintiff alleges that on the second occasion, which occurred on May 16, 2003, deputies attempted to cuff him, causing pain and injury.  Id. at 4.  Plaintiff alleges that he then went to his bunk to sit, a deputy entered his cell and slammed plaintiff's head on the bunk, twisting his arms, roughly placed cuffs on him, injuring his already-broken wrist, and the deputies also slammed him against the wall.[7]  Id. at 5.  Plaintiff again maintains that he never resisted or fought back.  Id.  From these two events, plaintiff alleges that he suffered lacerations to his face, scalp, and other injuries to his head, knees, and to his skin grafts.  Id. at 7.

Defendants contend that during these events, "plaintiff was exhibiting disruptive behavior in his cell and was non-compliant with verbal orders to stop the behavior.  His behavior included hurling invective, throwing objects around the cell (including a chair), kicking the cell door, and pounding repeatedly on the cell window and door with his injured hands."  MSJ at 12.  Defendants also contend that "[o]n both occasions plaintiff refused orders to cuff up, requiring officers to enter his cell and use force in order to place him in handcuffs and escort him to a safety cell.  Plaintiff was examined by a nurse after each of these incidents in response to his complaints of pain.  The nurse's examinations, as well as the x-rays taken after both incidents, revealed that he was not injured by the

---

toilet.  Pl.'s Decl. in Opp. to MSJ at 7.

7.  Plaintiff also alleges that just before this incident, a deputy repeatedly turned the lights in plaintiff's cell on and off.  Pl.'s Decl. in Opp. at 4.  Plaintiff said to the deputy that he was going to call the unit sergeant and plaintiff proceeded to bang a plastic cup on the door.  Id.

1   officers' application of force." Id.

2        The treatment a prisoner receives in prison and the conditions under which he is confined are

3   subject to scrutiny under the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 31 (1993).  In

4   excessive force claims, the core judicial inquiry is whether force was applied in a good-faith effort to

5   maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian,

6   503 U.S. 1, 6-7 (1992).  In determining whether the use of force was for the purpose of maintaining

7   or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may

8   evaluate the need for application of force, the relationship between that need and the amount of force

9   used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials,

10  and any efforts made to temper the severity of a forceful response.  Id. at 7.

11       Applying these principles to the instant case, the court concludes that there is a triable issue

12  of fact whether defendants' actions constituted the use of excessive force.  Plaintiff asserts that he

13  did not resist or fight the officers and that his injuries gave him pause whether to comply with the

14  officers' orders, while defendants contend that because plaintiff was verbally and physically violent,

15  officers had to apply force in order to properly transfer him to a safety cell.  These conflicting

16  allegations directly relate to both the court's evaluation whether there was a need for force and to the

17  court's assessment of the relationship between that need and the amount of force used.  Because

18  there is a dispute as to these material facts, the court must deny defendants' motion for summary

19  judgment as to plaintiff's excessive force claims.[8]

20                                    **CONCLUSION**

21       1.      For the foregoing reasons, the defendants' motion for summary judgment is

22  GRANTED as to defendants Frima Stewart and Randy Hurst.  The claims against these defendants,

23  and indeed, all plaintiff's medical care claims, are DISMISSED WITH PREJUDICE.  Stewart and

24  _____

25  8.  Defendants contend that they are protected by suit on these claims by the doctrine of
    qualified immunity.  MSJ at 17.  The court must deny defendants' motion as regards this
26  defense.  Taking plaintiff's allegations as true for purposes of this order, it would be clear
    to a reasonable officer that his conduct was unlawful in the situation he confronted, thereby
27  removing the protection of qualified immunity from defendants' actions.  Saucier v. Katz,
    533 U.S. 194, 202 (2001).
28

1   Hurst are hereby terminated from this action. Defendants' motion is DENIED as to the remaining

2   defendants regarding the excessive force claims.  These remaining defendants are Marin County,

3   Marin County Jail, Marin County Sheriff's Department, Marin County Sheriff's Deputies, the

4   Members of the Marin County Board of Supervisors, Sgt. De Lao, Sheriff Deputy McKenzie, Sheriff

5   Deputy Haynes, Sgt. Seyler, Sheriff Deputy Filipiak, and Sgt. Frey.  Having found genuine issues of

6   material fact to exist as to plaintiff's excessive force claims, this matter is ready for trial.

7        2.        The parties are to submit statements by November 7, 2008 suggesting when they will

8   be ready for trial, whether any discovery is necessary, and, if so, what specific discovery they wish

9   to undertake, and giving their estimates as to the length of trial.  It appears from the docket that

10  neither side has requested a jury.  If one of the parties requested a jury, that party should identify the

11  document on which the request was made.

12       3.        The court will then issue a scheduling order and any other necessary order to further

13  govern these proceedings.

14       4.        This order terminates docket numbers 60, 82, and 83.

15       **IT IS SO ORDERED.**

16       DATED:    9/30/2008

17                                                          RONALD M. WHYTE
                                                            United States District Judge

18

19

20

21

22

23

24

25

26

27

28